Good morning. We're ready to call our first case. Talley v. PA.Sept.of Corrections. Good morning, your honors, and may it please the court. My name is Andrew Butaro, and I'm here as amicus counsel on behalf of the appellant, Qyuntez Talley. With the court's permission, I'd like to resume. Before you start, let me just say we really appreciate your firm stepping in at the request of the court and helping out with this case, serving as appellant counsel. I think it's a wonderful brief. It's just a very well-written thought. I'm not saying you're right, but it's just nothing wrong either, but it's just a very well-done brief, and I want to add my thanks. Well, thank you very much for your kind words, and we appreciate it. I feel like I have to jump in, yes. Well, he's feeling grateful. He's from Jersey, so he'll have to listen to us. Oh, my heavens. Do we go there right away? No, no, no. Well, I'm glad the panel is unanimous on this question. With the court's permission, I'd like to reserve three minutes for rebuttal, please. Done. Great. Mr. Talley should be permitted to proceed in former paupers in this appeal because he has not accrued three strikes under the PLRA. All three of the issues that the court identified in its order appointing counsel independently contribute to making Pelle a mixed dismissal that cannot qualify as a strike. Can you help us out with the question of who's got the burden of proof to deal with an issue if it's not clear what the district court's basis for dismissal was? Sure, I'd be happy to. Generally, the courts of appeals have held that the burden of production when it comes to the IFP question is on the party opposing that IFP status, but the party seeking to proceed in former paupers bears the ultimate burden of persuasion. Right. So if I understood the D.C. Circuit's position correctly, it sounds like that's what you're articulating here, that in the first instance, the government has to come or the state has to show up and say, okay, look, here's a dismissal. We think it's a strike because of one of the enumerated grounds. Once they do that, then the burden of going forward and showing that it's not one of the enumerated grounds rests on Mr. Talley, right? That's correct, yes. It will be Mr. Talley's burden of persuasion on the question of his eligibility to proceed. And in evaluating whether he can satisfy the requirements to proceed IFP, we're of course looking to what this court has said as to what constitutes a dismissal for purposes of Section 1915G, which is the three strikes rule of the PLRA. And this court has said many times, most recently in the presidential decision Garrett v. Murphy, that a dismissal must be made explicitly on strike captain grounds for a strike to accrue. But when you look at the excessive force claim, right, and you look at the heading that it comes that shouldn't fall within the ambit of the enumerated grounds because clearly the district court has identified these claims fall within the ambit of 12B6. So help us there. Sure. There are a few reasons why the heading doesn't resolve what we argue is the lack of clarity here on the dismissal grounds. One reason is because in taking up Talley's excessive force claim, the Palais decision dedicates three sentences to it and doesn't say in the three sentences that this claim is being dismissed pursuant to Rule 12B6. It doesn't say in that. We've always said, not only here but in all the fields of law, that no magic words are necessary. And the voluntary withdrawal was pursuant to the assertion of sovereign immunity. And the court, in accepting the withdrawal, said the claim was therefore dismissed. How would it not be a 12B6 dismissal? Well, there are a couple reasons. So first, we know that Rule 12B6 isn't the exclusive standard that governed how the Palais court looked at each of these claims. We know that the Palais court analyzed the exhaustion issue, for instance, under Rule 56. So 12B6 isn't the exclusive standard governing the analysis here. I will also... An exhaustive claim. Excessive force, and that is an exhaustive claim. 12B6, I don't think there's any dispute about that. He did exhaust the excessive force claim. Got into court. Legitimately, the issue was that when he got there, it was a sovereign immunity preclusion of the claim. So the excessive force claim and the voluntary withdrawal, that's actually not the sovereign immunity issue. That ties to the battery claim, which is another issue. But your point remains, Your Honor, that the heading does seem to suggest a potential ground for dismissal, right? It certainly does. It's explicit. So why would we not look at it the way Pennsylvania is urging us to look at it? So let's look at that heading specifically, just exactly what it says. The heading that the government is pointing to in regards to the excessive force claim says the complaint fails to state a claim against the Commonwealth defendants, right? Saying that Talley's complaint fails to state a claim doesn't mean that all of Talley's claims are dismissed for failure to state a claim. And I think a simple thought experiment could make this clear. Well, you're emphasizing this as on it's being a second order heading, right? That's part of it, yes. Right? Because if we thought it was meant to pertain, and logically it would pertain to each one of the three that follows, the way the heading is set up, we would think, okay, it's saying the excessive force claim doesn't state a claim, right? Because that language pertains to each of the subheadings that follow, does it not? Not necessarily, because the excessive force claim that was voluntarily withdrawn isn't necessarily based on Rule 12b-6. The court could have simply been exercising its inherent authority. And who does that cut against based on our very first exchange this morning? If there's ambiguity, who's got the burden of persuasion? It's your client. I mean, the person on whose behalf you're arguing kindly today. I mean, isn't the burden of persuasion with him? So if we're left wondering, doesn't that cut against him? It doesn't, no. Because although Mr. Talley has the burden of persuasion on this question, what we're looking at is the background law on Section 1915G. And that is a technical statute that provides the exclusive three grounds for what qualifies as a strike accruing dismissal. And this court has made clear in decision after decision that it must be explicit. But what inference could we possibly draw from that subheading other than everything that comes after is pursuant to 12b-6? Give me a plausible inference that we can draw besides that. Sure, Your Honor. The court may have simply thought that because Talley wasn't standing on that claim, it didn't have to construe it under Rule 12b-6 at all. It might have thought that the claim was simply out of the suit. It might have thought that it could exercise its fist. No, no, no. I'm sorry. Go ahead. No, go ahead. My question was, what other inference could a reader, our panel, come to but that everything that came after that was pursuant to 12b-6? I think that... Give me a reasonable inference that one could draw besides that. A reasonable inference could be that to the extent that the court was dismissing claims that were live in the action, it might have been dismissing them for failure to state a claim to some extent. But in the specific discussion of those claims under that heading, recall that the Palais Court sometimes will invoke specifically a failure to state a claim. It will sometimes invoke, for instance, in regards to the ADA claims, the Twombly-Iqbal plausibility standard of Rule 12b-6. When it's discussing the excessive force claim, it simply says that Talley voluntarily withdraws that claim or voluntarily agrees to dismiss that claim, so it's dismissed. It doesn't bring in that Rule 12b-6 language. It doesn't specifically cite it. What language would we require in that instance? It seems that if the opening salvo is withdrawn, I mean, that would seem to be superfluous to go through any recitation of what the requirements are, right? Because it's withdrawn. Not necessarily because we know that the Court did expand and expound on the dismissal basis for some of the other claims. The other thing is, the Court could have said any of those other claims withdrawn. They were not, no. So the Court could have, by the way, the Court could have easily said, you know, even if Talley had not withdrawn this claim, we would nonetheless dismiss it for failure to state a claim under Rule 12b-6. So you're arguing that it has to be more explicit than saying it doesn't state a claim? If, yes, for a strike to accrue, the Court has to... But that's a pretty close standard. You're arguing magic words, and we said we don't require magic words, but it's hard to hear your argument and conclude anything other than the Court has to really use magic words if something's akin to magic words. I think something so clear it couldn't be mistaken, which, of course, then seems to burden the proof back to the State when we've already agreed that ambiguity cuts against the prisoner. Well, let's go back to Garrett v. Murphy, the recent decision that discusses the magic words requirement, or lack thereof, any such requirement, right? In that decision, you had an underlying district court opinion that expressly stated that all claims were dismissed on strike-counting grounds. And I'll point out, by the way, that the parties don't dispute that there are two strikes that tally has occurred in this case, right? And those two decisions also have that same sort of explicit discussion that states at the end of the opinion... There's no question that things could be more explicit. That's really not what we're trying to wrestle with here. And, in fact, let's talk about the assault and battery for a second, because that might throw some light on this. As you point out, that's the one in which it may be unclear whether the Court was addressing this on sovereign immunity grounds under 12b1 or failure to state a claim under 12b6. You seem to want to have it both ways, so to speak. You want to say, hey, when we're talking about stuff, believe us when we say we're just withdrawing the claim and accept that that's what the Court's doing with respect to excessive force. But when they, the state, says we're moving on the basis of failure to state a claim, you should really believe that the Court did it on the basis of sovereign immunity. If we're going to accept that Mr. Talley can frame it and that it sticks with respect to excessive force, so he can say I'm withdrawing and that's the way it should be seen, why shouldn't we do the same thing when we're looking at the assault and battery claim and say, okay, the state chose to do this on the basis of 12b6 and we'll accept that that's the way it's framed and that's the way the district court decided it. Well, as a starting matter, we're looking to the Court's opinion and the Court's order. Garrett versus Murphy makes that clear. It also says in Garrett that the district court's opinion must be read as an integrated whole, and you concede that in your brief, which would mitigate against the kind of magic language analysis that you're trying to get us to rely upon. Well, I think that the nature of whether the dismissal ground is explicit or not obviously has to turn to some extent on what the claim is, right? And so part of the issue here is that not only did the Court in dismissing the assault and battery claim, it didn't in that paragraph, putting the heading aside, didn't in that paragraph expressly dismiss it under Rule 12b6 or for failure to state a claim. We're looking at that in the context of the fact that Rule 12b6 isn't the exclusive vehicle for disposing of a claim on sovereign immunity grounds. And so that's what contributes to the overall lack of clarity here. I see my time has expired, although of course I'd be happy to answer more questions if the panel would like. Anything, Judge Greenway? Yeah, just give me one second. Sorry. I'm good for the moment. Thank you. Okay. Okay. I'll have you back on the bill. Thank you very much. Thank you. May it please the Court. My name is Michael Scorinci. I'm a Deputy Attorney General with the Pennsylvania Office of Attorney General. I'm here representing the appellees, the Pennsylvania Department of Corrections, and their various named officials. Start. Okay. Let's jump right in, Mr. Scorinci. Sure, Your Honor. And start, if you would, with the excessive force claim. The Court in July did, in fact, say exactly what the pro bono counsel has said. The only language dealing with the excessive force claim under the heading excessive force claim is, he's withdrawn. It's dismissed on that basis. That's it. That's the only thing they say. Under the heading excessive force, it's withdrawn. Dismissed on that basis. Why doesn't that just mean exactly what it says, which is, he's, I don't even have to talk about this. He's withdrawn it. Done. I want to be clear about a few things. First is, it's under a heading, as you've all mentioned. That's a second tier heading. And then under that is another heading. And that heading is excessive force. Right. And the only thing under that heading is what I've just described. It says, but it didn't, the Court was not bound by Mr. Talley's characterization. It did not use the words voluntarily withdraw. It used the words, he agreed to dismiss. Now, yes, it does. Says the, that Mr. Talley, that he voluntarily agreed to dismiss. It did not use the words withdrawal, because this could not have been, a withdrawal could not have been consistent with the Federal rules of. It's got to be a specific kind of dismissal to fit under an 1815G. How does that help you? Maybe that's where you're going. Well, I am where I'm going, Your Honor. There's five markers that this was a 12B6 dismissal. That was the exclusive basis for our motion. The Court invoked that standard at the outset. The heading again said the DOC, there's no complaint, there's no claim stated against the DOC defendants that said this claim, that this claim will be dismissed. And then finally, the Court engaged in a futility analysis. And the important point here is, Mr. Talley could not have used, that this so-called withdrawal was not in any way consistent with the Federal rules of civil procedure. The proper way to withdraw is through a motion for a leave to amend under Rule 15. Well, that doesn't, you're kind of attributing a certain sophistication to a pro se litigant, which we don't attribute. He is very sophisticated, Your Honor. Well, he's prolific. The same thing as sophisticated. Now, here's the language, the precise language. It says defendants are accused of violating his rights under excessive force clause. Talley, however, represents in his brief in opposition to the Commonwealth defendants motion to dismiss that he has voluntarily agreed to dismiss this claim. Therefore, this claim is dismissed. So, you're asking us to read into voluntarily agreed to dismiss a concession that he cannot state a claim. Absolutely, because the only thing he could have agreed with respect to our motion was that he failed to state a claim. We made that very clear in our motion. He didn't say, I agree with the Commonwealth. He said, I agree, go ahead and dismiss it. But I think we're back to square one with the Court is not bound by his characterization. He can't chart the course for the Court on how to dismiss a claim. But our precedent is, as Mr. Boutar was described, we require district courts to be, they don't have to use magic words, but they do have to be explicit. If they're going to say we're dismissing for failure to state a claim, they need to say that. It seems like you're asking us to do something that is, in fact, contrary to our previous precedent and allow a district court to not be explicit about the ground on which it's dismissing. Again, Your Honor, I go back to the heading where it says the complaint fails to state a claim. The heading, and that's the only inference you can make from that. The heading is sufficient. So, going forward, what you want us to do is say, if there's a heading, despite what voluntarily agreeing to dismiss, right? Have the heading just says dismissed. Is that enough? I think that is enough, Your Honor. But I think... Okay. We're going to change the hypothetical. Okay. Heading, nothing beneath it that alludes to dismissal. Just the heading says where we are and goes on to the next claim. Is that enough? If it's in the face of an exclusive 12v6 motion, absolutely. Okay. So, basically, the point we're at now is, if there's a heading that can be identified with 12v6, that's enough. Yes. So, let's say the heading said the complaint... Instead of mirroring the rule, let's say the heading said the complaint falls short. Is that enough? Fall... The only word is fall short. That's hypothetical. The complaint falls short. No, because you've made it clear that it has to say, either refer explicitly to 12v6 or use those words like failure to state a claim. So, I think that's the Garrett standard. That's Ball v. Famiglio standard. If you have that, no magic words, but that's enough. So, fall short. No, that's not enough. So, basically, side heading, subheading, which states that fail to state a claim or some reasonable iteration or permutation of that, that's enough. Yes. If there's no more questions on the state constitutional law claim, I'm happy to move on to the next issue, which is sovereign immunity. Yeah, sure. Go ahead. Now, the rule you've said is the district court must explicitly and correctly conclude that the complaint reveals immunity defense on its face and dismiss under Rule 12v6. So, there's two elements, an explicit dismissal and a correct dismissal. Now, I think we've gone through the five markers. Nothing's changed since what I said two minutes ago. 12v6 motion exclusively, the 12v6 standard, the heading, this claim will be dismissed with prejudice and then a futility analysis. This is very explicit. If it's, in fact, if sovereign immunity is a jurisdictional point, then it doesn't matter what the district court said on that point, does it? In fact, I thought you acknowledged that in your briefing, that if the court got it wrong and we said, sovereign immunity, that's jurisdictional, that's a subject matter jurisdiction dismissal, that would not be, that would not be a strike, right? A subject matter jurisdictional dismissal would not. But this, a sovereign, state sovereign immunity does not go to subject matter jurisdiction. You answered this question in Ball v. Sumiglio, which I know you authored. And there you looked at Jones v. Bach. And in Jones v. Bach, a Supreme Court case, the court said, whether a particular claim is subject to dismissal is not determined in the abstract, but by the allegations in the complaint. The court used the example of the statute of limitations. It could be clear from the face of the complaint that an action is time barred. And you simply extended that rule to the failure to exhaust and immunity-based defenses. And that's exactly what the district court did here. It looked at the complaint, specifically Paragraph 30, and said, this is an assault and battery claim. The Commonwealth has not waived immunity for that. It has not waived immunity for that. Right. So, well, let's dilate on this a little bit. Is sovereign immunity a subject matter jurisdiction? No, it does not. It's not compatible with subject matter jurisdiction. And I'll explain to you why. Thank you. The jurisdiction of the federal courts, as your honors know, comes from the Constitution and from the acts of Congress. And as you've said many times, no party can consent to federal jurisdiction. And what happens with state sovereign immunity is that the Pennsylvania legislature decides that we're either going to consent to suit and waive immunity. So it would be the Pennsylvania legislature that's deciding that it's being subject to the jurisdiction of the federal courts. That's simply not compatible with subject matter jurisdiction. So even if we're talking about in the abstract, it's not compatible. So I would say it's not exclusively. And this Court— What do you mean it's not exclusively? Like, are you saying this is some sort of chameleon thing, that it can be subject matter jurisdiction sometimes and subject matter jurisdiction other times? We've seen some courts use 12—I mean, some litigants use 12b-1, and the Court's dismissing on 12b-1. But this Court has used 12b-6 in a number of cases. I cited to many of them at page 27. Have we used 12b-1? I don't have one off the top of my head. But I think— Because it doesn't help you. But I don't recall—a famous lawyer answer. But I don't recall any from Mr.—there might have been some district court cases, I think, that Mr. Butaro cited. Yeah, there are. And if those district court cases were correct, and it actually goes to our subject matter jurisdiction, am I right that you at least acknowledge that, yeah, if that's true, and the dismissal as a matter of law should have been for subject matter jurisdiction, we wouldn't be under an enumerated ground. We would have a mixed dismissal, and we would not have a strike, right? That's a lot to follow there. I would say, again— Let's just—then follow me. Yeah. I thought I saw in your briefing, and maybe I was wrong about this, an acknowledgement that if there is subject matter jurisdiction dismissal under 12b-1— Yes. —then that is not an enumerated ground. That's all correct. There cannot be a strike. Yes, that's all correct. All right. So if sovereign immunity is a matter of subject matter jurisdiction, something that the state can raise at any time, including on appeal for the first time— Yes. —then the correct dismissal would be 12b-1, not 12b-6, because you can't blow past subject matter jurisdiction and start dismissing on the merits. You've got to address your subject matter jurisdiction, and you've got to say, I don't have a basis for deciding this. You're out of court. Ergo, no strike. No, I go back to my answer regarding Jones v. Bach and Ball v. Smiglio. The pivotal question is, what's in the complaint? What are the allegations? Is it revealed on the face of the complaint? Well, that seems odd to me, because what you're really saying is, what's in the complaint will control whether or not there's subject matter jurisdiction, which, as you've rightly noted, is absolutely at odds with our precedent that says, it doesn't matter what the parties say. What matters is whether we've got subject matter jurisdiction, and that stands independent of what the parties say. But let's move on. You're making a distinction, a jurisdictional distinction, between sovereign immunity arising from state sovereignty and sovereign immunity arising from federal sovereignty, I thought you were saying. And in the latter subject, you've got subject matter. You don't have subject matter jurisdiction, whereas in the former, you do have subject matter jurisdiction to entertain the claim. But you're saying it's a 12b-6 because the Commonwealth hasn't consented. Therefore, no claim has been stated, but there's subject matter jurisdiction to reach that determination. Whether there's state sovereign immunity involved. I think that's what you're saying. I think that's what I'm saying, too. I think we have to make a distinction between 11th Amendment immunity, which is in the Constitution, and here we have state sovereign immunity. The 11th Amendment would be from the Constitution, whereas state sovereign immunity, again, is determined by the Pennsylvania legislature. So, yes, you have subject matter jurisdiction because it deals with Can the state waive its sovereign immunity? Yes. Yes, that's right. But even if you had subject matter jurisdiction, and let's go on the part of the hypothetical that the state has within its powers, whether it chooses to waive or not. And then, so, right? Yes. Now we're focused on what's required in the complaint. And if the court says explicitly that on its face, clearly, sovereign immunity applies, then that's bad for the petitioner, right? Yes. So here's the question I have for you. Is it clear here that sovereign immunity applies such that the plaintiff should know that and therefore this should count as a strike? Because in the opinion, the judge notes, well, the Commonwealth is a party that clearly immunity applies there. And she goes on to say, well, when you look at an employee acting in the course of their employment, that's clear as well. But couldn't a plaintiff in that circumstance be thinking about whether there was some individual liability that might arise, in which case it wouldn't be clear on its face? The complaint was directed only on a single defendant here, Lieutenant Morris. And as far as whether he should have known, I mean, the prisoner obviously takes notice of the law. I mean, we can't presume that he's ignorant. So I'm not sure if I'm answering your question exactly, Judge Greenaway. Well, I guess my question is, let me just reference the language. A dismissal based on immunity of the defendant, whether absolute or qualified, does not constitute a PLRA strike, including a strike based on frivolousness, unless the court, one, explicitly and correctly concludes that the complaint reveals the immunity defense on its face, and two, dismisses the unexhausted complaint under 12b-6 or expressly states the ground.